25CA0872 Peo in Interest of Clave 07-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0872
Pueblo County District Court No. 25MH30040
Honorable Kelle Thomas, Magistrate

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Daniel Boaz Clave,

Respondent-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Daniel Boaz Clave, appeals a magistrate's order authorizing the involuntary administration of two antipsychotic medications: paliperidone (Invega) and olanzapine (Zyprexa).  We affirm the order.

## I.     Background

¶ 2     According to the affidavit and testimony of his treating physician, Dr. Paul Mattox, Clave is fifty-four years old and has a long history of refusing medication to treat his schizophrenia.  Clave was first hospitalized and diagnosed in 1992.  In 2005, Clave was committed to the Colorado Mental Health Hospital in Pueblo (CMHHIP) after he was found not guilty by reason of insanity on charges of second degree assault and resisting arrest — offenses that occurred after he had stopped taking his psychiatric medications.  Clave was granted conditional release in 2016, but in 2024, he again refused treatment, his condition deteriorated, his release was revoked, and he was readmitted to CMHHIP.

¶ 3     At CMHHIP, Clave displayed symptoms including paranoia, delusional beliefs, agitation, and thought disorganization, but he refused medication.  When he became severely agitated and lunged at his medical provider, CMHHIP staff involuntarily medicated Clave

1

on an emergency basis with Zyprexa. Once the ten-day course of emergency medications ended, Clave began voluntarily taking daily oral doses of Invega. The People petitioned for a six-month order permitting the involuntary administration of Invega — either as daily oral doses or monthly injections — and Zyprexa — either as a backup daily oral or injectable medication.

¶ 4 After the parties consented to magistrate jurisdiction, *see* C.R.M. 6(e)(2)(B), a magistrate conducted an evidentiary hearing and issued an order granting the People's petition. On appeal, Clave challenges the sufficiency of the evidence supporting the court's order.

## II. Legal Authority and Standard of Review

¶ 5 A court may authorize the involuntary administration of medication to a patient only if the People establish each of the following elements by clear and convincing evidence: (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to themself or others in the institution; (3) a less intrusive treatment

2

alternative isn't available; and (4) the patient's need for treatment with medication is sufficiently compelling to override their bona fide and legitimate interest in refusing medication. *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985); *see People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011).

¶ 6 When a patient challenges the sufficiency of the evidence supporting the court's findings on any of these elements, we review the record as a whole and, viewing it in the light most favorable to the People, determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review the court's conclusions of law de novo and defer to its findings of fact if supported by evidence in the record. *People v. Marquardt*, 2016 CO 4, ¶ 8. We also defer to the court's resolution of evidentiary conflicts and its determinations of witness credibility, the weight of the evidence, and the inferences to be drawn from the evidence. *See People in Interest of R.C.*, 2019 COA 99M, ¶ 7. A physician's testimony alone may constitute clear and convincing evidence. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

### III. The Fourth *Medina* Element

¶ 7    Clave challenges the sufficiency of the evidence only for the fourth *Medina* element.  He argues that his desire to refuse medication is based on bona fide and legitimate interests in bodily autonomy and in avoiding potential adverse side effects including anxiety, blood clots, and pain from injections.  We conclude that the record provides ample support for the court's findings on this element.

¶ 8    In assessing whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment, a court must determine (1) "whether the patient's refusal is bona fide and legitimate" and, if so, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution."  *Medina*, 705 P.2d at 974.

### A. Testimony and Findings

¶ 9    At the evidentiary hearing, Clave described several side effects, including a blood clot, that motivated him to stop taking a previous

4

antipsychotic medication (risperidone). Clave testified that despite Invega's similar potential side effects, there was no need for court-ordered treatment because he had voluntarily taken Invega for six days and would continue to do so. But Clave also testified that he has a history of refusing to take unnecessary psychiatric medication, and he believes the doctors at CMHHIP are experimenting on him. He expressed two objections to involuntary medication: he wished to have a say in his treatment, and he wished to avoid treatment by injections because they can be painful.

¶ 10 Even though Clave didn't object to taking Invega or Zyprexa based on their potential adverse effects, Dr. Mattox addressed those effects in his testimony. Regarding potential adverse effects from Invega, Dr. Mattox testified that among Clave's reported effects of risperidone, Invega could cause only a remote risk of deep vein thrombosis and two other treatable conditions: dry skin and constipation. Regarding Zyprexa, Dr. Mattox explained that although Clave had told him the medication caused anxiety and an increased heart rate, those symptoms were caused by Clave's feelings about taking the medication — they weren't side effects of

5

the medication itself. Dr. Mattox also testified that unless Clave refused to take oral medication or was released from the hospital, there was no need to administer any medication by injection.

¶ 11 Dr. Mattox specifically testified that he knew of no bona fide and legitimate reason for Clave to refuse Invega or Zyprexa. And he opined that without the requested medications, Clave would (1) experience a significant and likely long-term deterioration in his psychiatric condition and (2) pose a serious risk of harm to others.

¶ 12 At the conclusion of the testimony, the court found Dr. Mattox's opinions to be credible and persuasive. It therefore adopted them as its own. The court found that the People had established each of the *Medina* elements by clear and convincing evidence. As relevant to the fourth *Medina* element, the court found that Clave had expressed a bona fide and legitimate interest in refusing injections, but his need for treatment was sufficiently compelling to override that interest.

### B. Analysis

¶ 13 Clave argues that he expressed bona fide and legitimate interests in refusing medication. The court agreed, and so do we. *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 62 (a desire to

6

avoid adverse effects can constitute a bona fide and legitimate reason to refuse medication). But he doesn't present any specific argument regarding the court's consideration of his and the State's interests; instead, he simply asserts that the court "erred in finding that his interests were outweighed by those of the State."

¶ 14  Reviewing the record as a whole in the light most favorable to the People, and deferring to the court's finding that Dr. Mattox is a credible witness, we conclude that ample evidence supports the court's finding that the State's interest in treating Clave outweighed his objections. *See Ramsey*, ¶ 23; *R.C.*, ¶ 7. Dr. Mattox's affidavit and testimony established that (1) Clave's risks of adverse side effects from Invega and Zyprexa are treatable or minimal; and (2) without treatment, Clave's condition will significantly deteriorate, and he will become a danger to others. We conclude that this evidence clearly and convincingly supports the court's finding that Clave's legitimate interest in refusing medication must yield to the state's legitimate interests in preserving his health and protecting the safety of those in CMHHIP. *See Medina*, 705 P.2d at 974; *Pflugbeil*, 834 P.2d at 846-47.

## IV. Disposition

¶ 15     We affirm the order authorizing the involuntary administration of medication.

JUDGE TOW and JUDGE YUN concur.